**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to:
19-cv-01785; 19-cv-01867; 19-cv-01893;
19-cv-01781; 19-cv-01783; 19-cv-01866;
19-cv-01895; 19-cv-01794; 19-cv-01865;
19-cv-01904; 19-cv-01798; 19-cv-01869;
19-cv-01922; 19-cv-01800; 19-cv-01788;
19-cv-01870; 19-cv-01791; 19-cv-01792;
19-cv-01928; 19-cv-01926; 19-cv-01868;
19-cv-01929; 19-cv-01803; 19-cv-01806;
19-cv-01906; 19-cv-01801; 19-cv-01894;
19-cv-01808; 19-cv-01810; 19-cv-01809;
18-cv-04833; 19-cv-01911; 19-cv-01898;
19-cv-01812; 19-cv-01896; 19-cv-01871;
19-cv-01813; 19-cv-01930; 19-cv-01815;
19-cv-01818; 19-cv-01931; 19-cv-01918;
19-cv-01873; 19-cv-01924; 19-cv-10713.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION ON FURTHER QUESTIONING OF**
**CHRISTIAN EKSTRAND**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................2

     I.     The National Audit Office's press release should be excluded
           under the Court's ruling on the admissibility of the National Audit
           Office's report. .........................................................................................................2

     II.    There is no reason to recall Mr. Ekstrand to testify about the
           National Audit Office Report or his emails with Ms. Munksgaard. ........................4

     III.   The Bech-Bruun report is inadmissible hearsay. ....................................................6

CONCLUSION ......................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accely v. Consolidated Edison Co. of New York, Inc.,* 2023 WL 3045795
(S.D.N.Y. Apr. 20, 2023) ........................................................................................7

*Bridgeway Corp. v. Citibank,* 201 F. 3d 134 (2d Cir. 2000) ..........................................8

*Dora Homes, Inc. v. Epperson,* 344 F. Supp. 2d 875 (E.D.N.Y. 2004).....................6, 7

*Kirk v. Raymark Indus., Inc.,* 61 F.3d 147 (3d Cir. 1995) ..............................................7

*Maurillo v. Park Slope U-Haul,* 194 A.D.2d 142 (2d Dep't 1993) ................................6

*In re MetLife Demutualization Litig.,* 262 F.R.D. 217 (E.D.N.Y. 2009)........................8

*Miranda-Ortiz v. Deming,* No. 94 CIV 476 CSH, 1998 WL 765161 (S.D.N.Y.
Oct. 29, 1998) .......................................................................................................10

*Pappas v. Middle Earth Condo. Ass'n,* 963 F.2d 534 (2d Cir. 1992).........................6, 7

*In re Parmalat Secs. Litig.,* 477 F. Supp. 2d 637 (S.D.N.Y. 2007) ................................8

*In re Sept. 11 Litig.,* 621 F. Supp. 2d 131 (S.D.N.Y. 2009) .........................................10

*U.S. v. Davidson,* 308 F. Supp. 2d 461 (S.D.N.Y. 2004)..............................................10

*U.S. v. Perez,* No. 09-CR-1153 (MEA), 2011 WL 1431985 (S.D.N.Y. Apr. 12,
2011) .......................................................................................................................3

**Statutes and Rules**

Fed. R. Evid. 801(d).................................................................................................1, 6, 7

Fed. R. Evid. 803(8)............................................................................................................8

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to the defendants' motion on further questioning of Christian Ekstrand (ECF Nos. 1375-77).

## PRELIMINARY STATEMENT

Defendants provide no ground to recall Mr. Ekstrand to the stand for additional cross-examination.  The arguments that defendants should be permitted to cross-examine Mr. Ekstrand on the National Audit Office's 2016 report and accompanying press release seek a third bite at the apple.  The Court ruled *in limine* that the conclusions in that report with which defendants wish to "confront" Mr. Ekstrand are inadmissible and denied defendants' motion for reconsideration of that ruling.  Nothing in Mr. Ekstrand's testimony is ground for the Court to revisit that decision.

Nor should Mr. Ekstrand be recalled so defendants can ask him about more of his emails with Ms. Munksgaard.  There is no reason defendants could not have cross-examined Mr. Ekstrand on any supposed efforts to mislead the National Audit Office when he was on the stand, as they in fact did with respect to Ms. Munksgaard's edits to a note Mr. Ekstrand wrote.  That defendants may wish they asked Mr. Ekstrand more questions does not justify extending his cross-examination.

And, finally, there is no reason to recall Mr. Ekstrand to be cross-examined on the Bech-Bruun report because that report is inadmissible hearsay.  Bech-Bruun was not an agent of the Danish government or authorized to make statements on its behalf, so the statements in its report are not opposing party statements excluded from the rule against hearsay under Federal Rule of Evidence 801(d)(2)(C) or (D).  Nor is the report sufficiently trustworthy to be admitted under any exception to the rule against hearsay because Bech-Bruun suffered from a conflict of interest

when it prepared the report in that it provided legal advice to North Channel Bank about its participation in the fraud it was supposed to investigate.

## ARGUMENT

I.     **The National Audit Office's press release should be excluded under the Court's ruling on the admissibility of the National Audit Office's report.**

Defendants protest too much that their proffered use of the National Audit Office's 2016 press release summarizing the conclusions of its report is "an attempted end-run around the Court's prior ruling."  (Defs. Br. 9.)  In that ruling, the Court excluded the 2016 National Audit Office Report "except to the extent that it contains data relevant to SKAT's loss amount."  (ECF No. 1195 at 5.)[1]  Defendants moved for reconsideration of that ruling, pointing to the same conclusions in the report concerning SKAT's verification of dividend withholding tax refund applications that are included in the press release they proffer now.[2]  The Court denied that motion because it advanced a new "theory of relevance" not identified in their opposition to SKAT's motion to exclude the report.  (ECF No. 1226 at 2 (defendants "seek a 'do over' so that they can switch to a faster horse").)

Defendants' argument that the press release is admissible because SKAT moved to exclude only the report itself, as if a press release announcing the report's conclusions would be

---

1.    Defendants do not contend that the conclusions from the press release they seek to use in questioning Mr. Ekstrand are relevant in that they "contain data relevant to SKAT's loss amount."

2.    *Compare, e.g.*, ECF No. 1377-3 (Press release) ("SKAT has not verified basic information in the of [sic] dividend tax refund applications, e.g. ownership, and whether the applicant has paid dividend tax, and that SKAT has not had a clear division of responsibilities and tasks, management procedures and IT systems that could support the control") *with* ECF No. 1212 (Defs. Mot. for Reconsideration Br.) at 3 ("The 2016 Report concludes that SKAT's administration of dividend tax reimbursement was 'very unacceptable,' 'extremely inadequate,' and 'made on a completely inadequate basis' because '**SKAT did not check completely basic information in the requests**.'").

2

admissible even if the report itself were not, is risible.  (Defs. Br. 9.)[3]  Thus, defendants did have

the "opportunity" and "need to advise the Court of theories of relevance as to the press release"

because the press release just restates the same conclusions that were in the report that SKAT

moved to exclude.  (Defs. Br. 9.)

 Nor did Mr. Ekstrand's testimony open the door for the press release's admission.  For

instance, defendants never asked Mr. Ekstrand the total amount SKAT paid in refund claims

after Mr. Amstrup's tip.  As such, the press release's statement that "SKAT continued to pay

refunds totaling DKK 3.2 billion following the time when information was received from outside

on suspected fraud" is not "proper impeachment of Mr. Ekstrand."  (Defs. Br. 9.)  Indeed, Mr.

Ekstrand acknowledged that SKAT "paid out [DKK] 1.8 billion" to the payment agents that

submitted the fraudulent refund claims after Mr. Amstrup's June 2015 tips.  (Declaration of Marc

A. Weinstein, dated January 12, 2025 ("Weinstein Decl."), at Ex. 1 (January 10, 2025 Tr.) at

301:13-18.)  That defendants now wish they had asked Mr. Ekstrand the total amount SKAT

paid during that period too is no good reason to recall Mr. Ekstrand to the stand, much less to

permit them to use the National Audit Office Report as the means to do so.

 And while, as defendants note, an *in limine* ruling "is subject to change as the case

unfolds," (Defs. Br. 7-8 (quoting *U.S. v. Perez*, No. 09-CR-1153 (MEA), 2011 WL 1431985

(S.D.N.Y. Apr. 12, 2011)), Mr. Ekstrand's testimony unfolded exactly as defendants should have

anticipated.  Mr. Ekstrand's disagreement with the conclusion of the 2010 internal audit report

that SKAT did not verify the refund claims was no surprise.  He testified to exactly this at his

---

3.  In its motion *in limine*, SKAT moved to exclude the main reports that it anticipated defendants might seek to introduce at trial.  Attempting to anticipate, in advance of an exhibit list, every document produced in this case defendants may have sought to use that relates to, summarizes, or reproduces parts of those reports would have been an exercise in futility and burdened the Court with myriad documents to consider.  But SKAT has objected to these sorts of documents on defendants' exhibit list and the ground for exclusion is the same as set forth in the Court's order.

3

deposition in May 2021.[4]  And this has been SKAT's position throughout this litigation.  If

defendants believed that the report was relevant to that testimony, they should have advised the

Court as much in their opposition to SKAT's motion to exclude the report.

## II.    There is no reason to recall Mr. Ekstrand to testify about the National Audit Office Report or his emails with Ms. Munksgaard.

Defendants argue that Mr. Ekstrand should be recalled so that they can "confront" him

with an email exchange he had with Ms. Munksgaard concerning an apparent inquiry from the

National Audit Office concerning what SKAT did after receiving the first tip from Mr. Amstrup.

(Defs. Br. 10-13.)  But as an initial matter, the National Audit Office Report's conclusion recited

in those emails is inadmissible under the Court's *in limine* ruling.  That the National Audit Office

concluded that "SKAT has paid out approx. DKK 3,2 billion . . . after the time when SKAT

received information about the alleged fraud . . . . despite the fact that SKAT was aware about

the number of requests and the total amount of reimbursement had increased significantly while

internal controls were deficient" or that SKAT "should have taken a number of measures as soon

as possible after receiving outside information about suspected fraud" (Defs. Br. 11-12 (quoting

Dullberg Decl. Ex. 4)), has nothing to do with any "data relevant to SKAT's loss amount."  (ECF

No. 1195 at 5.)

Further, defendants already had the opportunity to cross-examine Mr. Ekstrand on any

supposed "effort to mislead and hide information from NAO to avoid damage to SKAT's

---

4.    Weinstein Decl. Ex. 2 (Ekstrand Dep Tr. Vol 2) at 253:3-254:3 (Q: "In the bullet above that, it says, 'SIR finds that there are no checks in connection[] with refund requests as to whether the investor is actually a shareholder and whether the investor is, in fact, liable for tax in Denmark or not.'  Was that accurate as of 2010?"  A: "I wouldn't say so, no."  Q: "Why not?"  A: "So there was process in place and we've discussed several times. When we . . . receive an application, first we review whether it's in compliance with the conditions.  That is already when mail is opened, where the[] applications are divided into two parts.  Subsequently, we go through whether the application complies with the criteria[] for being awarded a refund. . . .  whether the form has been printed and signed, whether a certificate from the domicile is included, and whether a dividend credit advice has been included from a third party, and whether this matches the application submitted before this is inputted into the system.").

reputation." (Defs. Br. 12.) For instance, defendants already cross-examined Mr. Ekstrand on the email wherein he suggested that the amount paid to the reclaim agents was not the right number to focus on because they "are not suspected of anything." (Defs. Br. 12.) Defendants could have, but did not, ask Mr. Ekstrand any follow up questions to bring out any supposedly illicit motive after he acknowledged that it was incorrect to say at the time that the reclaim "agents were not suspected." (Weinstein Decl. Ex. 1 (January 10, 2025 Tr.) at 302:11-14.) That defendants, after having reviewed the transcript, have thought of more questions for Mr. Ekstrand is no basis to recall him to the stand. And defendants also already cross-examined Mr. Ekstrand on another instance in which Ms. Munksgaard edited a note he wrote, supposedly "to conceal that SKAT should have done more." (*Id.* at 393:6-395:10.) The Court sustained SKAT's objection to testimony as to Ms. Munksgaard's intent and there is no reason to think further cross-examination on the new email defendants proffer now will be any more fruitful.

That supposedly "troubling" email purportedly showing the "extraordinary lengths" to which SKAT will go "to find people to blame for its own mistakes," (Defs. Br. 13), shows nothing of the sort. Ms. Munksgaard told Mr. Ekstrand that she would tell the National Audit Office they "have no further comments" because they had "previously very carefully explained the progress from receiving the first notification to the end of the payments." (Dullberg Decl. Ex. 4.) And it was the Ministry of Taxation, not Mr. Ekstrand or Ms. Munksgaard, as defendants imply, that raised the confidentiality concern noted in the National Audit Office's Report.[5]

---

5.  *Id.* ("The Danish Ministry of Taxation has stated that, for reasons of confidentiality, the Danish National Audit Office cannot be informed of how the Danish Tax Agency and the Ministry of Taxation reacted to the outside information from the time the information was received for the payments and what possible measures were taken as a result of the outside information.").

III.    **The Bech-Bruun report is inadmissible hearsay.**

The Bech-Bruun report is not, as defendants argue, an opposing party statement excluded from the rule against hearsay under Federal Rule of Evidence 801(d)(2).  "Courts have historically applied agency law to determine whether the declarant was authorized by the party to make the statement at issue" within the meaning of Federal Rule of Evidence 801(d)(2)(C).  *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 884 (E.D.N.Y. 2004) (internal quotation omitted).  And the same obviously is true with respect to statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).[6]

Defendants' argument that the Bech-Bruun report is not hearsay overlooks that Bech-Bruun did not act as the Ministry of Taxation's (or any other part of the Danish government's) agent in preparing the report.  An agency relationship arises where the principal and agent agree that the agent will act on the principal's behalf on the matter within the scope of the agency and subject to the principal's control.  *See Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993).  But the report itself is clear that the Ministry of Taxation had no control over Bech-Bruun with respect to the contents of its report.

As the report recounts, "[o]n December 16, 2016, the [Danish] Government . . . concluded an agreement on the initiation of a legal investigation into the payment of dividend tax refunds by the Danish Tax Agency (SKAT)" under particular "terms of reference."  (Dullberg Decl. Ex. 6 at 4.)  Those terms of reference provide that the commissioned investigation shall be "an independent legal enquiry" and that "[t]he investigation shall not be open to interrogation or

---

6.    *See also Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) ("A sufficient foundation to support the introduction of vicarious admissions therefore requires . . . that a party establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.").

consultation by officials or other persons concerned." (*Id.* 4-5.)  On December 23, 2016, the

Ministry of Taxation issued a request for proposals for the investigation and in February 2017,

"announced its intention to award the contract to the law firm of Bech-Bruun." (*Id.* at 6.)

The circumstances here are thus not like those in *Accely v. Consolidated Edison Co. of New York, Inc.*, (Defs. Br. 14-15), where the report at issue was prepared by a Con Ed "employee" within the scope of his "employment relationship with the company."  No. 19 Civ. 5984 (DC), 2023 WL 3045795, at *4 (S.D.N.Y. Apr. 20, 2023).  The attorneys at Bech-Bruun who drafted the report were not Danish government employees.  Rather, Bech-Bruun was more akin to an independent contractor.  "Unlike an agent, whose acts are subject to the principal's direction and control, an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work."  *Dora Homes*, 344 F. Supp. 2d at 884 (because declarants "were independent contractors of Defendants, this is a separate and independent reason why Fed. R. Evid. 801(d)(2)(D) does not apply to their statements").  The Danish government retained Bech-Bruun to make its own findings and draw its own conclusions with respect to the matter at hand, not to make statements on behalf of the Danish government.  *Cf. Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) ("Because an expert witness is charged with the duty of giving *his or her* expert *opinion* regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.").[7]

---

7.  *See id.* ("Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony.").

Nor is the Bech-Bruun report sufficiently trustworthy to be admitted under any exception to the rule against hearsay, including the Fed. R. Evid. 803(8) public records exception, even assuming Bech-Bruun qualifies as a public office. "When evaluating the trustworthiness of a factual report," courts "look to," among other things, "possible motivation problems," *Bridgeway Corp. v. Citibank*, 201 F. 3d 134, 143 (2d Cir. 2000), and "anything else that bears on the reliability of the proffered evidence." *In re Parmalat Secs. Litig.*, 477 F. Supp. 2d 637, 641 (S.D.N.Y. 2007).

On September 1, 2022, the Danish Supreme Court issued its decision affirming the Disciplinary Board of the Danish Bar and Law Society and the Eastern High Court's decisions that Bech-Bruun had "a conflict of interest" when it "undertook to conduct the legal investigation" in 2017. (Weinstein Decl. Ex. 3 at 19.)[8] As the Danish Supreme Court explained, the Danish "principle of professional conduct" and the circumstances of the investigation authorized by the Danish Parliament, *i.e.*, in a "case . . . of great political, economic and social importance," "entailed strict[] requirements for the attorney's independence, including in relation to firms with possible links to the unjustified recovery of dividend tax." (*Id.* at 19-20.) Bech-Bruun's attorneys "disregarded" that "professional conduct" principle "by assuming the legal investigation," thus there was "a significant deficiency in the investigation." (*Id.* at 23.) And because Bech-Bruun conducted the investigation despite its "conflict of interest" arising from the advice it provided to a participant in the very fraud related to its investigation, (*id.* at 19), its report is not sufficiently trustworthy. *Cf. In re MetLife Demutualization Litig.*, 262 F.R.D. 217, 240 (E.D.N.Y. 2009) (New York Superintendent of Insurance's report was not untrustworthy in

---

8.  Bech-Bruun and its attorneys also were disciplined by the Bar—Bech-Bruun lost its claim to payment of fees from the Ministry of Taxation for the investigation while the attorneys were each fined. (Weinstein Decl. Ex. 3 at 19.)

part because he "already had received an opinion from the New York State Ethics Commission concluding that his participation . . . did not give rise to a conflict of interest").[9]

    Demonstrating the inherent nature of the conflict, when SKAT subsequently sued Bech-Bruun, the firm argued in its defense that SKAT was "contributorily negligent" and assumed the risk of fraudulent refund claims based on the same evidence and arguments in its report. (Weinstein Decl. Ex. 4 at 13-14.)  For instance, Bech-Bruun argued that "SKAT and the Danish Ministry of Taxation deliberately chose not to carry out any substantive control of applications for refund[s] of dividend tax;" "SKAT could and should have discovered that the applications for refunds submitted in 2014 accompanied by dividend credit advice slips issued by North Channel Bank were unusual;" "[t]he management in the field of dividends has been irresponsible;" and "it is an expression of contributory negligence that SKAT did not suspend the processing of applications for refund[s] of dividend tax until" August 2015.  (*Id.*)  All these arguments were rejected by the Supreme Court, which found "no circumstances to justify Bech-Bruun's liability to lapse or be limited on grounds of contributory negligence or assumption of risk."  (*Id.* at 21.) But that Bech-Bruun made them evidences the firm's self-interest in the subject matter of its supposedly independent investigation.

---

9.  Bech-Bruun's conflict of interest arose because starting in 2014, it had advised North Channel Bank concerning its potential liability for participating in the conduct at issue.  (Weinstein Decl. Ex. 3 at 19.)  That was a prudent question for North Channel Bank to ask, but it received incorrect advice.  In an August 2014 opinion letter, Bech-Bruun had advised North Channel Bank that it "should not be subject to Danish civil law liability to compensate the Danish state for any loss suffered" or to "criminal liability as a result of its role in the contemplated transaction[s]."  (*Id.* at 21.)  But "[i]n the same years" Bech-Bruun provided its advice, the bank "contributed to fraud of a particularly serious nature, as the bank prepared incorrect documentation which was used to obtain from Danish tax authorities an undue payment of not less than DKK 1.1 billion in dividend tax refunds."  (*Id.* at 19.)  "In September 2019," North Channel Bank pleaded guilty "in the District Court of Glostrup," Denmark to criminal "fraud of a particularly aggravated nature" and "accepted to pay a fine of DKK 110 million."  (*Id.* at 18.)  And in November 2023, the Danish Supreme Court held Bech-Bruun liable to SKAT for the advice it provided North Channel Bank and ordered it pay SKAT DKK 400 million, plus interest.  (*See* Weinstein Decl. Ex. 4 at 22.)

Finally, even if the report were admissible, its legal conclusions should still be excluded, including the one with which defendants propose to "confront" Mr. Ekstrand, *i.e.*, "that SKAT having paid out refunds of dividend tax 'without having carried out a check on whether the substantive conditions for doing so were met did not comply with the requirements of administrative law for sound investigation as a condition for taking a decision.'" (Defs. Br. 16-17 (quoting DX5626).) "[C]onclusions of law are not admissible in expert reports or testimony" because they usurp the roles of the Court to instruct the jury as to the law and the jury to apply the law to the facts. *Miranda-Ortiz v. Deming*, No. 94 CIV 476 CSH, 1998 WL 765161, at *1 (S.D.N.Y. Oct. 29, 1998). "[T]here is no more compelling reason why such legal conclusions should be made admissible when they appear in public records." *Id.*[10]

Defendants' argument that the Bech-Bruun report is relevant to their statute of limitations theory, (Defs. Br. 17-19), fails for the same reason as did their same argument with respect to the National Audit Office's report and other evidence that supposedly show "that SKAT in fact knew it was at risk of paying out illegitimate claims but failed to make a proper investigation." (ECF No. 1195 at 2 (internal quotation omitted).) "As this Court explained previously, this theory of relevance is flawed because it does not demonstrate that SKAT knew or should have known of its claims *against the defendants*, which is the relevant inquiry under Danish law." (*Id.* (internal quotation omitted).)[11]

---

10. *See also In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 153 (S.D.N.Y. 2009) ("Conclusions of law are likely inadmissible."); *U.S. v. Davidson*, 308 F. Supp. 2d 461, 475 (S.D.N.Y. 2004) ("*legal* conclusion" was not admissible under public records exception).

11. The excerpts of the Bech-Bruun report in defendants' trial exhibit also include conclusions about previous internal audit reports that the Court has excluded. *Compare* Dulberg Decl. Ex. 6 ("We are of the opinion that SKAT initially responded adequately to SIR's report of May 30, 2013, but that the follow-up given by SKAT's Executive Board was insufficient, given the nature of the facts pointed out in the report.") *with* ECF No. 1195 at 4 ("The 2013 SIR Report would be irrelevant substantially for the reasons explained by plaintiff to which defendants offer no substantive response.").

Nor does the Bech-Bruun report cure defendants' foundation issue with respect to the admissibility of Sven Nielsen's separate fraud.  (Defs. Br. 19-20.)[12]  For instance, Bech-Bruun's conclusion that in its "opinion, the specific circumstances of the tax assessment case that SKAT dealt with in 2011 should have led to an investigation by SKAT not only of the employee, but also of the person from whom the transfers of the amounts originated" (Defs. Br. 19), sheds no light on what SKAT knew and when.  The same is true for the report's hindsight conclusion that "[i]t would have been appropriate if the relatively large sums transferred to Sven Nielsen had given rise to reflections on the risks that Lisbeth Rømer was also aware of in 2011 in the area of dividend tax."  (Defs. Br. 19.)  Indeed, the report suggests that SKAT's awareness of the amounts transferred to Mr. Nielsen did not give to "reflections" on such "risks."[13]

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court deny defendants' motion on further questioning of Mr. Ekstrand.

---

12.  Weinstein Decl. Ex. 1 (January 10, 2025 Tr.) at 233:2-7 (The Court: "Well, look, at the moment, I don't think you have a foundation for it.  I don't know what you think SKAT knew and how you are going to establish it at relevant points in time.  The fact that years after this whole thing was done the man got convicted of what he got convicted of doesn't follow.").

13.  Mr. Nørding's "rewritten note about [his] personal records" likewise does not show what SKAT knew or suspected concerning Mr. Nielsen's separate fraud in 2011 or any point in time thereafter.  (Defs. Br. 19.)  Mr. Nørding was never deposed in this case and defendants' proffered interpretation of his notes is entirely speculative.

Dated: New York, New York
      January 12, 2025

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein
    William R. Maguire
    Marc A. Weinstein
    Neil J. Oxford
    Dustin P. Smith
    Gregory C. Farrell
    One Battery Park Plaza
    New York, New York 10004-1482
    Telephone: (212) 837-6000
    Fax: (212) 422-4726
    bill.maguire@hugheshubbard.com
    marc.weinstein@hugheshubbard.com
    neil.oxford@hugheshubbard.com
    dustin.smith@hugheshubbard.com com
    gregory.farrell@hugheshubbard.com

    *Counsel for Plaintiff Skatteforvaltningen*
    *(Customs and Tax Administration of the*
    *Kingdom of Denmark)*